UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RANDY QUAID AND EVGENIA QUAID, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. 14-2116 (RJL) |
| | ) | |
| JOHN F. KERRY, in his capacity as | ) | |
| Secretary of State, and, U.S. DEPARTMENT | ) | |
| OF STATE, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

FEB 17 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(February __, 2016) [Dkt. #9]

Plaintiffs, Randy and Evgenia Quaid ("the Quaids" or "plaintiffs"), brought this case against defendants John F. Kerry, in his capacity as Secretary of State, and the United States Department of State. Plaintiffs contend that by revoking their passports, defendants illegally deprived them of their rights to identify as United States citizens and to possess documentation of their citizenship. Presently before the Court is defendants' motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing both that the Court lacks jurisdiction and that plaintiffs failed to state a cognizable claim of deprivation of any constitutional right or privilege. Upon consideration of the parties' pleadings and the relevant law, the Court GRANTS defendants' motion.

### BACKGROUND

The Secretary of State ("Secretary") and his designees at the United States Department of State ("State Department") have the authority to grant and issue passports to United States citizens. 22 U.S.C. § 211a. Pursuant to this authority, the Secretary

1

identified in regulations the circumstances in which passports may be denied or revoked. *See generally* 22 C.F.R. § 51.60–.62. Of relevance here are subsections 51.60(b)(9) and 51.62(a)(1), which provide that the State Department may revoke or limit a passport when it "determines or is informed by competent authority that" the bearer is "the subject of an outstanding state or local warrant of arrest for a felony." *Id.* §§ 51.60(b)(9), 51.62(a)(1).

The Quaids are United States citizens. Compl. ¶ 8 [Dkt. #1]. On or around December 12, 2013, while plaintiffs were in Canada, the State Department revoked their passports on the grounds that plaintiffs were subjects of felony arrest warrants issued by a county court in Santa Barbara, California. Compl. ¶¶ 10-11; Pls.' Mem. 3–4 [Dkt. #10]. The State Department later confiscated plaintiffs' passports.[1] Compl. ¶ 13; Pls.' Mem. 8–9. Plaintiffs do not contest that they were indeed the subjects of felony arrest warrants at the time, and, therefore, they do not dispute the grounds for the revocation.[2] Instead, plaintiffs claim the revocation was unconstitutional because the Fourteenth Amendment secures the absolute right of United States citizens to possess their passports as proof of their citizenship. Compl. ¶¶ 13, 16, 24. They argue that without a passport, an American citizen is deprived of his or her privilege to "demand the care and protection of the Federal government over his life, liberty, and property when on the high seas or within the

---

[1] For brevity's sake, the Court will use the term "revocation" and its derivatives to refer to both the revocation and the subsequent physical confiscation of plaintiffs' passports.

[2] In their memorandum in opposition to defendant's motion to dismiss, plaintiffs question the validity of the arrest warrants and suggest defendants' acted improperly by failing to conduct an independent investigation into the grounds for the warrants. Pls.' Mem. 3–4. But the complaint does not allege the warrants were invalid or that defendants have a duty to assure themselves a warrant was properly issued before revoking the subject's passport. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv.*, 297 F.Supp.2d 165, 170 (D.D.C. 2003). The Court therefore cannot and does not consider these arguments.

2

jurisdiction of a foreign government," a privilege secured by the Fourteenth Amendment's Privileges and Immunities Clause. Pls.' Mem. 6 (quoting *Slaughter-House Cases*, 83 U.S. 36, 79 (1872)). They further claim revoking a passport violates a citizen's right to remain a citizen under the Fourteenth Amendment's Citizenship Clause. Compl. ¶¶ 22–23. Plaintiffs ask the Court, *inter alia*, to declare defendants' actions unconstitutional and to enjoin defendants to return their passports. Compl. ¶ 29(a), (c).

## DISCUSSION

### I. Jurisdiction

Defendants assert that sovereign immunity protects them from this suit, and they move for dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defs.' Mem. 3 [Dkt. #9]. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction," and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Z St., Inc. v. Koskinen*, 44 F. Supp. 3d 48, 63 (D.D.C. 2014) ("The sovereign immunity doctrine applies equally to the government itself and to a federal official sued in his official capacity."). "Sovereign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, and the United States's consent to be sued is therefore a "prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Faced with a motion to dismiss under Rule 12(b)(1),

"[t]he plaintiff bears the burden of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 80 (D.D.C. 2012). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

Plaintiffs allege violations of the Constitution, and "[t]ypically this Court would have jurisdiction over such claims pursuant to 28 U.S.C. § 1331, which grants district courts 'jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Xia v. Kerry*, 73 F. Supp. 3d 33, 38 (D.D.C. 2014). However, defendants are a federal agency and a cabinet secretary sued in his official capacity, and the United States's sovereign immunity protects them from suit unless plaintiffs establish the government has waived immunity. *See Pittman v. Lappin*, 662 F. Supp. 2d 58, 60 (D.D.C. 2009) ("An official capacity suit against a federal official is one against the agency itself and, as such, one against the United States of America.") (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Plaintiffs assert the Administrative Procedure Act ("APA") supplies a basis for the Court's jurisdiction. Compl. ¶ 6 (citing 5 U.S.C. §§ 701–08). Section 702 of the APA states:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. As plaintiffs argue and defendants concede, Pls.' Mem. 2–3, Defs.' Mem. 5 n.4, this section constitutes an explicit waiver of the federal government's immunity "with respect to suits for nonmonetary damages that allege wrongful action by an agency or its officers or employees." *Z St.*, 44 F. Supp. 3d at 63; *see also Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011) (construing Section 702 and finding "there is no doubt Congress lifted the bar of sovereign immunity in actions not seeking money damages"). This is such a suit, and defendants are not entitled to immunity "to the extent that plaintiffs seek only injunctive and declaratory relief." *Xia*, 73 F. Supp. 3d at 39.

Defendants contend that, despite its reliance on the APA for purposes of jurisdiction, the complaint only raises claims under 42 U.S.C. § 1983 and not APA claims. Defs.' Mem. 4; Defs.' Reply 1–2 [Dkt. #13]. Defendants reason that there is no express waiver of sovereign immunity in Section 1983 itself "that would render a federal agency such as the State Department subject to liability" and that they therefore retain immunity from this suit. Defs.' Mem. 4. But, "[t]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996); *see also Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) ("[T]he 1976 amendments to § 702 of the Administrative Procedure Act, 5 U.S.C. § 702, eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity."). Subject to exceptions not applicable here,[3] the question of whether APA Section 702's waiver

---

[3] "The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere" and "claims seeking relief expressly or impliedly forbidden by another statute."

applies to a claim turns on the relief being sought and not on the cause of action under which a claim is brought. *See Cobell v. Babbitt*, 52 F. Supp. 2d 11, 21 (D.D.C. 1999). Because plaintiffs' claims are for non-monetary relief, they fall within the terms of APA's waiver and defendants are not immune.[4]

At the heart of defendants' objection to the Section 1983 claims is their assertion that Section 1983 "does not apply to federal officials acting under color of federal law," Defs.' Mem 4 (quoting *Jackman v. United States*, 604 F. Supp. 2d 84, 89 (D.D.C. 2009)), and that it therefore "cannot be invoked as a vehicle for suit against" them. Defs.' Mem. 4. That objection is really an argument that plaintiffs' complaint fails to identify a suitable cause of action. Such an argument does not challenge the Court's jurisdiction, because "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946). Rather, "[w]hether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and

---

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992). While plaintiffs' appeals to Section 1983 may be inartful or misguided pleading, they are not attempting to rely on Section 1983 in order to circumvent some other remedial scheme or statutory limitation applicable to the type of claims they bring—that is, claims for non-monetary relief alleging a federal agency or federal official in his official capacity violated the Constitution.

[4] Defendants cite *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005), in which our Circuit Court considered whether sovereign immunity barred the plaintiff's Section 1983 claim for declaratory and injunctive relief. The Court found that it did and dismissed the claim, stating, "If the United States has not consented to being sued under § 1983, sovereign immunity requires the court to dismiss [the plaintiff's] claim for lack of jurisdiction." *Id.* Defendants argue this Court should likewise dismiss present plaintiffs' Section 1983 claims for want of jurisdiction. Defs.' Mem. 4–5. However, the *Settles* Court considered only whether Section 1983 or the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105–33, §§ 11000–11723, 111 Stat. 251, 712–87 (1997), contains an express waiver of the United States's sovereign immunity. *Id.* at 1105–06. Unlike plaintiffs here, there is no indication the plaintiff in *Settles* put forth APA Section 702 to meet his burden of demonstrating the necessary waiver for his Section 1983 claim.

not before the court has assumed jurisdiction over the controversy." *Id.*; *see also El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 892 (D.C. Cir. 2014) (distinguishing the sovereign immunity inquiry from the question of whether a plaintiff "identified a viable cause of action and alleged facts sufficient to state a plausible claim under that cause of action"); *Xia*, 73 F. Supp. 3d at 39 (rejecting the government's argument that "because plaintiffs have not adequately stated a cause of action under § 1983" the Court lacks jurisdiction). Therefore, defendants' argument should and will be considered under Federal Rule of Civil Procedure 12(b)(6).

## II. Failure to State a Claim

Having assured itself of its jurisdiction, the Court proceeds to consider whether plaintiffs have stated a claim upon which relief may be granted. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts all factual allegations as true and "construe[s] the complaint in a light most favorable to the plaintiff." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 258 (D.D.C. 2011). However, the Court need not accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678.

Defendants argue that the complaint raises only Section 1983 claims, but on close examination, it identifies another cause of action. The complaint cites the APA's

authorization of judicial review of "final agency action." Compl. ¶ 6 (quoting 5 U.S.C. § 704). Plaintiffs allege that the revocation of their passports was defendants' "final decision on the matter," and that plaintiffs have "exhausted all administrative remedies." Compl. ¶ 12. The Court reads these allegations as appeals to the APA's "generic cause of action in favor of persons aggrieved by agency action." *Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985). Further, the request for relief prays upon the Court to find defendants' actions to be in violation of both "the Fourteenth Amendment to the United States Constitution *and* 42 U.S.C. § 1983." Compl. ¶ 29(a) (emphasis added). The Court therefore construes the complaint as raising claims under the APA, separate and apart from the Section 1983 claims. Regardless of which cause of action plaintiffs proceed under to bring their Fourteenth Amendment claims, however, it is rudimentary that they must plausibly allege a violation of a right protected by that Amendment. Because plaintiffs failed to do so, they have failed to state a claim upon which relief may be granted.[5]

---

[5] Plaintiffs also fail to state a Section 1983 claim because they did not allege in their complaint that defendants were acting "under color of state law" when they revoked plaintiffs' passports. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law."); *Harbury v. Hayden*, 444 F. Supp. 2d 19, 42 (D.D.C. 2006) ("[I]f a federal official acts pursuant to his or her federal authority, it is not deemed an act taken under color of state law."). Section 1983 actions against federal officials may be permissible where a state "cloaked [them] in some degree of authority" or where they "conspired or acted in concert with state officials to deprive a person of his civil rights." *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005) (quoting *Case v. Milewski*, 327 F.3d 564, 567–68 (7th Cir. 2003)). However, plaintiffs have neither identified a purported grant of authority from a state to defendants to revoke plaintiffs' passports nor alleged that defendants conspired or acted jointly with state officials. Instead, the complaint avers defendants revoked plaintiffs' passports "pursuant to 22 C.F.R. 51.62(a)(1) and 51.60(b)(9)." Compl. ¶ 10. Under those regulations, issuance of a state or local felony arrest warrant provides *cause* for the State Department to exercise its authority to revoke a passport, which derives from *federal law*. The Court notes defendants do not argue they are not "persons" for purposes of Section 1983.

Finally, plaintiffs maintain that the revocation of their passports violates the Privileges and Immunities Clause and the Citizenship Clause of the Fourteenth Amendment.[6] Compl. ¶¶ 23–24. Unfortunately for them, neither claim has an ounce of merit to it! As to the Privileges and Immunities Clause, plaintiffs have not alleged a violation of the Constitution because "the privileges and immunities clause of the Fourteenth Amendment applies only to the states, and not to federal agencies." *Robinson v. Huerta*, No. CV 14-0451, 2015 WL 5011411, at *9 (D.D.C. Aug. 24, 2015) (citing *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 543 n.21 (1987)). This limitation is expressly stated in the Amendment itself, which reads: "No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend XIV, § 1 (emphasis added). Defendants cannot violate a provision of the Constitution that does not apply to them, and therefore plaintiffs have not stated an actionable Fourteenth Amendment Privileges and Immunities Clause claim.[7]

---

[6] Plaintiffs make a passing reference to the Fifth Amendment in their memorandum in opposition to defendants' motion to dismiss. Pls.' Mem. 3. The complaint, however, does not once invoke the Fifth Amendment. "[P]laintiff[s] cannot amend [their] complaint *de facto* to survive a motion to dismiss by asserting new claims for relief in [their] responsive pleadings." *Coll. Sports Council v. Gov't Accountability Office*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006). The Court does not consider any Fifth Amendment claims, as plaintiffs first mentioned the Fifth Amendment in their opposition. Further, the Court notes that plaintiffs do not claim deprivations of their right to, or liberty interest in, international travel. The complaint specifically distinguishes between a passport's significance as a travel document and as evidence of United States citizenship and states plaintiffs' claims are related to the latter. Compl. ¶¶ 18–24.

[7] Even if plaintiffs had relied on a provision or authority that is applicable to the federal government and that grants plaintiffs the rights they claim, the motion to dismiss would still be granted for failure to set forth sufficient facts to make such a claim plausible. The complaint does not plausibly allege that passports are the *exclusive* documentation by which one may prove his or her citizenship, and plaintiffs do not contend to have been deprived of any other indicia of their citizenship, such as their birth certificates. Likewise, it is far from plausible from the facts alleged that plaintiffs would need to possess any documentation of their citizenship—let alone a passport specifically—in order to petition the federal government to intervene should they find themselves in crisis while outside the United States. As pleaded, the facts are not "enough

As to the Citizenship Clause,[8] the Quaids allege no facts even remotely suggesting that by revoking their passports defendants somehow destructed, took away, or terminated their citizenship. *See Afroyim v. Rusk*, 387 U.S. 253, 268 (1967) (elucidating the purpose and function of the Citizenship Clause). Indeed, defendants unequivocally acknowledge and maintain that plaintiffs are United States citizens. Defs.' Mem. 1. Which, of course, makes sense because a passport is merely one form of evidence of citizenship. As such, plaintiffs here were only "deprived of *proving* [their] citizenship in one way when [their] passport[s were] revoked." *Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 1, 4 (D.D.C. 1998) (emphasis added). And "unless the reason for revoking one's passport is based upon a finding of non-citizenship, the loss of a passport itself indicates nothing about the legitimacy of one's citizenship." *Id.* As the facts stated in the complaint do not demonstrate the revocation of plaintiffs' passports implicates their fundamental right of citizenship, plaintiffs failed to state a claim under the Citizenship Clause.

## CONCLUSION

Thus, for the foregoing reasons, the Court GRANTS defendants' Motion to Dismiss. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] Unlike the Privileges and Immunities Clause, "the protection afforded to the citizen by the Citizenship Clause of [the Fourteenth] Amendment is a limitation on the powers of the National Government as well as the States." *Saenz v. Roe*, 526 U.S. 489, 507–08 (1999).